UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY ANDERSEN, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil No. 15-30107-MGM |
| LASALLE BANK NATIONAL | * |
| ASSOCIATION, as Trustee for the WAMU | * |
| Mortgage Pass-Through Certificates Series | * |
| 2005-AR7 Trust; JPMORGAN CHASE | * |
| BANK N.A., as Servicer; MORTGAGE | * |
| ELECTRONIC REGISTRATION SYSTEMS, | * |
| INC.; and DOES 1 THROUGH 10, | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 34)

June 1, 2016

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Anthony Andersen ("Plaintiff"), acting *pro se*, brings this action against JPMorgan Chase Bank, N.A. ("Chase"), Bank of America, N.A., as successor to LaSalle Bank National Association ("BANA"), Mortgage Electronic Registration Systems, Inc. ("MERS" and, collectively with Chase and BANA, "Defendants").[1] Plaintiff alleges nine causes of action arising out of the foreclosure on his home in 2009. Defendants filed a motion to dismiss for failure to join a required party and for failure to state a claim. The court allows Defendants' motion to dismiss.

---

[1] Plaintiff also names "Does 1 through 10" as defendants, and identifies them as "persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the Subject Property described in the Complaint." (Dkt. No. 1, Compl. ¶ 20.) There is no indication that any unknown persons are claiming legal rights in the subject property. Instead, it appears these purported defendants are entirely fictitious, and are not meant to stand in for real persons or entities whose identities are merely unknown. The complaint does not mention these unknown defendants again, nor does it make any allegations against persons or entities whose identities are unknown to Plaintiff, so there are no claims against these purported defendants for the court to address.

II.    FACTS

On May 19, 2005, Plaintiff and his ex-wife Laura Andersen executed a Note and Mortgage in favor of Washington Mutual Bank, FA ("WaMu") in the amount of $325,000 for property located at 28 Sylvan Lane, Florence, Massachusetts (the "Property"). (Dkt. No. 1, Compl. ¶¶ 10, 30-33.) On or about June 25, 2005, Plaintiff's mortgage loan was securitized and placed into the WaMu Mortgage Pass-Through Certificates Series 2005-AR7 Trust (the "Trust"). (*Id.* ¶¶ 58-60, 63-68.) BANA is the successor to LaSalle Bank National Association, which was the trustee for the Trust. (*Id.* ¶¶ 67, 70.) Although neither party included documents related to the securitization process in their pleadings, the court takes judicial notice of the prospectus supplement regarding the Trust publicly filed with the SEC on June 22, 2005 and available on the SEC's EDGAR database.[2] *See* Fed. R. Evid. 201(b)(2); *OrbusNeich Med. Co., BVI v. Bos. Sci. Corp.*, 694 F. Supp. 2d 106, 111 (D. Mass. 2010). Under "The Trust" on page s-19, the prospectus supplement states "[t]he mortgage notes will not be endorsed to the Trust and no assignment of the mortgages to the Trust will be prepared" and indicates a subsidiary of WaMu "will retain possession of and will review the mortgage notes and mortgages as custodian for the Trust." The original prospectus to which the supplement is attached states on page 21 that "MERS will serve as mortgagee of record with respect to these Mortgage Loans solely as a nominee of the Trust, in an administrative capacity, and will not have any interest in these Mortgage Loans." Plaintiff was not made aware of the securitization, and he alleges several steps required to securitize the Note and Mortgage were not taken. (Compl. ¶¶ 61-62, 69.)

On September 25, 2008, Chase purchased Plaintiff's loan from the FDIC, which was acting as WaMu's receiver after WaMu collapsed. (Compl. ¶ 34; Dkt. No. 37, Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mem.") at 5.) On September 22, 2009, Chase sent a notice to Plaintiff's ex-wife and

---

[2] The prospectus supplement and the original prospectus can be found in the SEC's EDGAR database at https://www.sec.gov/Archives/edgar/data/314643/000095011705002505/a40012.txt. These documents are central to Plaintiff's claims and referred to in the complaint. (*See* Compl. ¶ 60.)

2

"all persons entitled to the benefit of the Servicemembers Civil Relief Act" ("SCRA") stating that it had filed a complaint with the Massachusetts Land Court for authority to foreclose on the Property. The notice stated that anyone entitled to the benefits of the SCRA who objected to the foreclosure should file an answer in the Massachusetts Land Court by November 9, 2009. (Compl. ¶¶ 39-40, Ex. B.) Plaintiff alleges he filed an objection, but the foreclosure proceeded anyway. (*Id.* ¶ 41.) Plaintiff does not allege any other facts relating to his eligibility to relief under the SCRA. On October 16, 2009, Chase's counsel sent Plaintiff's ex-wife a notice of intention to foreclose on or after November 19, 2009, due to a default on the Mortgage. (*Id.* ¶ 35, Ex. A.) Plaintiff alleges he was never served the notice, because he was incarcerated at the time. (*Id.* ¶¶ 36-37.) On October 27, 2009, Plaintiff sent Chase's counsel a letter indicating he had "a vested interest" in the Property and demanding "formal issuance of any legal action." (*Id.* ¶ 43, Ex. C.) This letter does not mention the SCRA, so it is unclear if this is the objection Plaintiff refers to, or if he sent an additional objection.

On November 18, 2009, a quitclaim deed was filed and recorded conveying the interest in the Property to Plaintiff from his ex-wife. (*Id.* ¶ 49.) On November 19, 2009, Chase foreclosed on the Property, which was valued at over $800,000 at the time. (*Id.* ¶¶ 47-48.) On December 9, 2009, Chase's counsel sent Plaintiff a notice to vacate the premises that stated Plaintiff's tenancy would be terminated as of February 1, 2010. (*Id.* ¶ 52, Ex. D.) On December 21, 2009, Plaintiff sent Chase's counsel a letter stating the foreclosure was invalid, directing Chase's representatives not to enter the property, and indicating that a lawsuit would be filed. (*Id.* ¶ 54, Ex. E.) On February 1, 2010, Chase recorded a foreclosure deed for the Property (*see* Defs.' Mem., Ex. 5), which Defendants attached to their brief and which the court will consider as a document central to Plaintiff's claims and sufficiently referred to in the complaint. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014). Plaintiff alleges that a new foreclosure date of April 1, 2010 was scheduled and that Chase merely filed a new foreclosure deed on February 1, 2010, without a foreclosure actually taking place

3

(*see* Compl. ¶ 50), but it is clear the foreclosure deed was executed on December 4, 2009 and merely recorded on February 1, 2010. Also on February 1, 2010, a Land Court judgment from November 18, 2009 finding that Plaintiff was not entitled to benefits under the SCRA and authorizing Chase to enter and sell the Property was recorded. (Defs.' Mem., Ex. 6.) Also on February 1, 2010, a certificate of entry was recorded certifying that Chase's representative made an open, peaceable, and unopposed entry on the Property on November 19, 2009, the date of the foreclosure. (*Id.*, Ex. 8.)

"The gravamen of Plaintiff's lawsuit," according to Plaintiff, is that (1) Defendants and the Trust were not holders or holders in due course of the Note at the time of the foreclosure sale, (2) Defendants and the Trust were not lawful beneficiaries (*i.e.*, mortgagees)[3] under the Mortgage, and (3) Defendants had no right to declare a default, foreclose on, or sell the Property. (Compl. ¶ 77.)

### III. DISCUSSION

#### A. Involvement of MERS

As an initial matter, Defendants seek the dismissal of all claims against MERS on the basis that it has no connection to Plaintiff's Mortgage. Plaintiff alleges MERS was a purported mortgagee and a nominee under the Mortgage. (*Id.* ¶¶ 19, 33.) Defendants attached the Mortgage to their memorandum in support of the motion to dismiss (*see* Defs.' Mem., Ex. 1), and the court will consider the Mortgage as a document central to Plaintiff's claim and sufficiently referred to in the complaint. *See Foley*, 772 F.3d at 74. As Defendants point out, the Mortgage does not mention MERS in any capacity. But the original prospectus for the Trust does identify MERS as the "mortgagee of record," even though it acts "solely as a nominee of the Trust, in an administrative capacity, and will not have any interest in these Mortgage Loans." While WaMu retained possession of the Mortgage and Note after the securitization process, and MERS was merely the mortgagee of

---

[3] The complaint refers to the various lenders as "beneficiaries," but the court will refer to them as "mortgagees" because that is the term used by the Mortgage (*see* Defs.' Mem., Ex. 1) and Massachusetts law. Mass. Gen. Laws ch. 244, § 14.

4

record and a nominee of the Trust, MERS was involved with Plaintiff's mortgage loan insofar as it held those limited titles. Therefore, the court does not automatically dismiss all claims as to MERS solely by reason of non-involvement with Plaintiff's mortgage loan.

### B. Motion to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. *See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012). When a plaintiff acts *pro se*, the court must liberally construe the plaintiff's pleadings and hold them to a less stringent standard than similar pleadings drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### 1. Wrongful Foreclosure (Fourth Cause of Action)

Plaintiff's cause of action for wrongful foreclosure is the heart of his complaint and forms the basis of a number of his other claims, so the court will analyze it first. Plaintiff alleges Defendants violated Massachusetts law by failing to use due diligence to contact him prior to the foreclosure and assess his options for avoiding foreclosure. (Compl. ¶¶ 207-09.) In support of this assertion, Plaintiff alleges that a notice of intention to foreclose was sent to his ex-wife (who also signed the Mortgage and the Note) on October 16, 2009, but he was not personally served with the notice while he was incarcerated. (*Id.* ¶¶ 35-37.) Massachusetts law requires that notice of intent to foreclose under power of sale be published "in a newspaper with general circulation in the city or

town where the land lies" and "sent by registered mail to the owner or owners of record." Mass. Gen. Laws ch. 244, § 14. Defendants have demonstrated the publication requirement was met (*see* Defs.' Mem, Ex. 5), which Plaintiff does not contest, and the registered mail requirement was met by the October 16, 2009 notice. The mailing requirement "is satisfied by mailing and nonreceipt is irrelevant," so Plaintiff's allegation that he was not personally served with the notice does not help his claim. *Hull v. Attleboro Sav. Bank*, 596 N.E.2d 358, 362 (Mass. App. Ct. 1992). In any event, it is clear that Plaintiff received actual notice of Chase's intention to foreclose, because he sent a letter responding to the notice from prison on October 27, 2009. (Compl., Ex. C.) *See Hull*, 596 N.E.2d at 361 ("There was no error in the entry of summary judgment for the reason, if no other, that the materials before the judge show that the plaintiff had actual notice of the foreclosure sale.").

Plaintiff asserts Defendants were not lawful mortgagees under the Mortgage and had no right to declare a default, initiate a foreclosure, or sell the Property. (Compl. ¶¶ 77, 214-15.) WaMu was the original mortgagee. After WaMu collapsed at the height of the financial crisis, the FDIC placed WaMu into receivership. Chase then purchased the assets, including Plaintiff's Mortgage, from the FDIC on September 25, 2008. "[T]ransfer of a mortgage, authorized by federal law, obviates the need for the specific written assignment that state law would otherwise require." *Demelo v. U.S. Bank N.A.*, 727 F.3d 117, 125 (1st Cir. 2013). Federal law specifically authorizes the FDIC, when acting as receiver of a failed bank, to "transfer any asset or liability" of the failed bank "without any approval, assignment, or consent with respect to such transfer." 12 U.S.C. § 1821(d)(2)(G)(i)(II). Therefore, the assignment of Plaintiff's Mortgage from WaMu to Chase, with the FDIC acting as intermediary, was properly consummated without a written assignment. Plaintiff also asserts Defendants breached their obligations under the Mortgage by failing to notify him of its assignment, transfer, and/or sale. (Compl. ¶¶ 210-13.) There is no indication that Defendants were required to notify Plaintiff of any such transfers. In fact, the Mortgage states that "[t]he Note or a

6

partial interest in the Note (together with this Security Instrument [*i.e.*, Mortgage]) can be sold one or more times without prior notice to Borrower [*i.e.*, Plaintiff]." (Defs.' Mem., Ex. 1 ¶ 20.) Therefore, Plaintiff's objections based on the assignment of the Mortgage are unavailing.

Plaintiff also states Defendants failed to satisfy a condition precedent that was required to initiate a foreclosure. (Compl. ¶¶ 216-17.) The condition (or conditions) precedent are not specified but, construing the complaint liberally in Plaintiff's favor, the court infers that other allegations of impropriety in the foreclosure found throughout the complaint form the basis of this aspect of the claim. Plaintiff alleges Defendants and the Trust were not holders or holders in due course of the Note at the time of the foreclosure sale. (*Id.* ¶ 77.) This appears to be related to Plaintiff's claim that the foreclosure was invalid because Chase held the Mortgage but not the Note at the time of foreclosure. (*Id.* ¶ 137.) In *Eaton v. Federal National Mortgage Association*, 969 N.E.2d 1118, 1129-30 (Mass. 2012), the Massachusetts Supreme Judicial Court interpreted relevant state law to hold that a foreclosure sale must be conducted by the note holder or its authorized agent. Given the uncertainty created by this new interpretation of the law, the *Eaton* court exercised its discretion to apply its holding only to foreclosures noticed after the date of the decision. *Id.* at 1133. The *Eaton* decision was issued on June 22, 2012, and the notice of foreclosure on Plaintiff's Property was sent on October 16, 2009, so *Eaton* does not apply. Generally, "the common law of Massachusetts permits the practice of splitting the mortgage from the debt that it secures." *Culhane v. Aurora Loan Servs. of Nebraska*, 826 F. Supp. 2d 352, 370 (D. Mass. 2011), *aff'd*, 708 F.3d 282 (1st Cir. 2013). Thus, even if Chase only held the Mortgage and not the Note, it was permitted to foreclose on the Property.

Plaintiff alleges that the securitization of his mortgage loan rendered the foreclosure void. Plaintiff claims that, because the loan was securitized and sold as part of a mortgage-backed security, none of the Defendants owned the loan at the time of the foreclosure or was a lawful mortgagee under the Mortgage. (Compl. ¶ 58.) The gist of this allegation seems to be that WaMu no longer

owned the mortgage loan after securitizing it and therefore could not transfer it to Chase (via the FDIC). The public SEC filings related to the Trust demonstrate that WaMu retained ownership over the mortgage loan after the securitization. The complaint itself alleges that "neither the Note nor the Mortgage was transferred or assigned to the Trust" (*see id.* ¶ 111), and the structure of the securitization transaction confirms that WaMu maintained ownership of the mortgage loan. Chase became the mortgagee after the FDIC placed WaMu into receivership and sold its assets to Chase. Thus, Chase was the lawful mortgagee at the time of foreclosure and, as discussed above, the fact that it did not hold the Note did not render the foreclosure improper.

Plaintiff also asserts he was never notified of the securitization of the mortgage loan, despite the Mortgage requiring notification of changes in ownership. (*Id.* ¶¶ 69-70.) Although Plaintiff cites paragraph 16 of the Mortgage as requiring notification, no such language appears in that paragraph. Paragraph 20 of the Mortgage contains language related to changes in ownership but, as previously discussed, it states that the mortgage loan "can be sold one or more times without prior notice" to Plaintiff. (Defs.' Mem., Ex. 1 ¶ 20.) The same paragraph also says Plaintiff will be notified in the event of a change of the loan servicer, but that provision is unrelated to Plaintiff's claim. (*Id.*) Finally, as a general matter, securitization has no effect on a mortgagee's right to foreclose because "the mortgages securing [securitized] notes are still legal title to someone's home or farm and must be treated as such," meaning that a mortgage (and only a mortgagee) may legally foreclose by the power of sale. *U.S. Bank N.A. v. Ibanez*, 941 N.E.2d 40, 51-52 (Mass. 2011); *see also id.* at 56 (Cordy, J., concurring) (securitization transactions "are not barred nor even burdened by the requirements of Massachusetts law"). Plaintiff's cause of action for wrongful foreclosure is dismissed.

    2.    <u>Negligence (First Cause of Action)</u>

Plaintiff alleges Defendants were negligent in failing to properly service his loan and failing to take the required steps to transfer, assign, and/or sell the Note and the Mortgage. (Compl. ¶¶

8

182-83.) Defendants argue any negligence claim is barred by the statute of limitations, which is three years for tort actions in Massachusetts. Mass. Gen. Laws ch. 260, § 2A. Under Massachusetts law, a cause of action for a tort accrues when a reasonable person, in the exercise of due diligence, "would have discovered the damage." *Riley v. Presnell*, 565 N.E.2d 780, 786 (Mass. 1991). In this case, the foreclosure process on the Property occurred on November 19, 2009 and Plaintiff wrote a letter objecting to the foreclosure on December 21, 2009. The foreclosure deed was recorded on February 1, 2010 and, even if the foreclosure was pushed back to April 1, 2010 as Plaintiff alleges, his filing of the complaint on June 17, 2015 falls well beyond the limitations period based on any of these dates. The statute of limitations bars Plaintiff's negligence claim, and this cause of action is dismissed.

       3.       <u>Breach of Covenant of Good Faith and Fair Dealing (Second Cause of Action)</u>

In his second cause of action, Plaintiff alleges the commencement of the foreclosure proceedings without the production of documents demonstrating the lawful right to foreclose was a breach of the covenant of good faith and fair dealing. (Compl. ¶¶ 187-92.) Because the court concludes Plaintiff fails to state a claim for wrongful foreclosure, this cause of action is dismissed.

       4.       <u>Breach of Fiduciary Duty (Third Cause of Action)</u>

In his third cause of action, Plaintiff alleges that, by acting as a mortgagee, MERS assumed and breached a fiduciary duty toward Plaintiff. (*Id.* ¶¶ 195-96.) This claim is directed solely at MERS, which Plaintiff asserts "presumed, at least under general equitable principles of fair and honest dealings, to acquire a fiduciary duty toward the Plaintiff" by virtue of its position with respect to the Mortgage. (*Id.* ¶¶ 195-205.) In Massachusetts, the principle of good faith and fair dealing is an implied covenant in all contracts that is separate from and does not automatically create a fiduciary relationship. *See FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 100-02 (1st Cir. 2009). Under Massachusetts law, as an exception to the rule that "a lender does not generally owe a fiduciary duty to a borrower," a mortgagee does owe a fiduciary duty to a mortgagor "to refrain from committing

9

fraud, bad faith or failing to use reasonable diligence . . . in the context of a foreclosure sale." *Pearson v. United States*, 831 F. Supp. 2d 514, 519-20 (D. Mass. 2011). But that fiduciary duty applies to the mortgagee conducting a foreclosure sale, which was Chase in this case, and not to a mortgagee of record acting solely as a nominee, in an administrative capacity, without any interest in the mortgage loan, which is the position MERS occupied. Even construing the complaint liberally in Plaintiff's favor to assert a breach of fiduciary duty against Chase, this cause of action would fail for the same reasons Plaintiff fails to state a claim for wrongful foreclosure. Finally, any fiduciary duty claims would be barred by Massachusetts's three-year statute of limitations. Mass. Gen. Laws ch. 260, § 2A. *See Doe v. Harbor Sch., Inc.*, 843 N.E.2d 1058, 1067 (Mass. 2006) ("Actual knowledge of injury suffered at a fiduciary's hands . . . sets the three-year statute of limitations in play."). This cause of action is therefore dismissed.

    5.    <u>Fraud (Fifth Cause of Action)</u>

Plaintiff's fifth cause of action alleges Defendants fraudulently concealed the fact and the terms of the securitization of his mortgage loan. (Compl. ¶¶ 221-26.) Rule 9(b) imposes a heightened pleading standard for fraud requiring plaintiffs to "state with particularity the circumstances constituting fraud." In other words, plaintiffs must plead "the who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). "[M]ere allegations of fraud, . . . averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985). Plaintiff does not meet the heightened pleading standard because his allegations do not sufficiently specify the representations he asserts to be false.

It would be futile for Plaintiff to amend his complaint to meet the Rule 9(b) pleading standard, as he requests leave to do in his opposition to the motion to dismiss (*see* Dkt. No. 43 at 4), and even if the court were to construe the existing complaint liberally to the same effect, his fraud

allegations would fail to state a claim under Rule 12(b)(6). His theory is that Defendants fraudulently misrepresented the fact that his loan would be securitized and failed to disclose the terms of the securitization. The Mortgage, however, states the loan may be sold without notice to Plaintiff. The court is reluctant to rely exclusively on the language of a dense document like the Mortgage, but there is simply no suggestion that any Defendant ever represented that Plaintiff's loan would not be securitized or that Plaintiff would be notified if it was. Moreover, it is difficult to understand how Plaintiff could have been harmed by the alleged misrepresentations. Plaintiff alleges he "would not have consented" to the securitization had he known about it (*see* Compl. ¶ 223), but the transaction did not require his consent and his consent was never given. According to Plaintiff, the loan's character changed as a result of the securitization, and if the transaction had been disclosed "Plaintiff would have known that the actions of Defendant[s] would have an adverse effect on the Plaintiff's home." (*Id.* ¶¶ 222-24.) While securitization has many consequences, it did nothing to affect Plaintiff's rights and obligations under the Note and Mortgage. Whether or not securitization occurred or was disclosed, Plaintiff always risked foreclosure by the mortgagee if he defaulted on his loan. Plaintiff is therefore unable to state a claim for fraud and this cause of action is dismissed.

   6. <u>Intentional Infliction of Emotional Distress (Sixth Cause of Action)</u>

In his sixth cause of action, Plaintiff alleges "Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage." (*Id.* ¶ 233.) According to Plaintiff, the fact that Defendants fraudulently foreclosed on the Property without having the right to do so "was undertaken with the specific intent of inflicting emotional distress on Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that he would be unable to exercise legal rights in the property," and this conduct was "so outrageous and extreme that it exceeds all bounds . . . usually tolerated in a civilized community." (*Id.* ¶¶ 234-35.) Because the court concludes Chase

properly foreclosed under the power of sale in the Mortgage, the premise underlying this cause of action is flawed.

Additionally, despite Plaintiff's conclusory allegations, there is no indication that any Defendant acted with intent to inflict emotional harm or in a manner "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roman v. Trustees of Tufts Coll.,* 964 N.E.2d 331, 341 (Mass. 2012); *see also In re Mae*, 460 B.R. 1, 4 (Bankr. D. Mass. 2011) (bank's exercise of what it believed was a right to foreclose could not constitute "extreme and outrageous" conduct); *In re Bailey*, 437 B.R. 721, 730 (Bankr. D. Mass. 2010) (dismissing intentional infliction of emotional distress claim where allegations could not support a finding that foreclosing bank acted with intent to inflict distress). Finally, the statute of limitations for intentional infliction of emotional distress is three years. Mass. Gen. Laws ch. 260, § 2A. Plaintiff has known of Chase's actions with respect to the foreclosure since the date it took place, November 19, 2009, rendering his claim untimely. Plaintiff's sixth cause of action must be dismissed.

7. RICO (Seventh Cause of Action)

Plaintiff alleges Defendants violated the RICO Act. To state a RICO claim, Plaintiff must allege Defendants conducted an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c); *Soto-Negrón v. Taber Partners I,* 339 F.3d 35, 38 (1st Cir. 2003). "Only 'racketeering activities' as enumerated by statute constitute predicate acts under [the] RICO [statute]." *Holmes Prods. Corp. v. Dana Lighting, Inc.,* 958 F. Supp. 27, 34 (D. Mass. 1997). The complaint does not identify any specific potential racketeering activities but, construing it in Plaintiff's favor, the court infers that Plaintiff's allegation that Defendants formed an association "for the purpose of defrauding Plaintiff" is the basis of his RICO claim. (Compl. ¶ 243.) Leaving aside the question of whether this garden-variety fraud claim could even be a predicate offense under the RICO statute, because Plaintiff has failed to

state a claim for fraud or for wrongful foreclosure, his RICO cause of action is dismissed. Amending this cause of action as Plaintiff requests in his opposition (*see* Dkt. No. 43 at 4) would be futile, because the court cannot identify any predicate offenses under 18 U.S.C. § 1961 that Plaintiff could plausibly assert as racketeering activities undertaken by Defendants.

        8.      <u>Conversion (Eighth Cause of Action)</u>

Plaintiff alleges "Defendants converted Plaintiff's property for their own use against the true ownership thereof." (Compl. ¶ 246.) Massachusetts law only recognizes a cause of action for conversion of personal property, not real property. *See, e.g., Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) ("Conversion requires the exercise of dominion or control over the personal property of another."); *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993) (to allege conversion, plaintiff must show "defendant intentionally and wrongfully exercised control or dominion over the personal property"). Plaintiff's conversion claim is premised on the conversion of his real property and is therefore not recognized under Massachusetts law. Reading the complaint liberally in Plaintiff's favor, this could be viewed as a claim for conversion of the proceeds of foreclosure sale, but that claim would still fail because "only a defendant that wrongfully exercises acts of ownership" has committed conversion, *Mass. Eye & Ear*, 412 F.3d at 230, and Plaintiff has failed to show that the foreclosure was wrongfully or improperly consummated. Additionally, a conversion claim has a three-year statute of limitations and Plaintiff is beyond the limitations period. Mass. Gen. Laws ch. 260, § 2A. The conversion claim is dismissed.

        9.      <u>Breach of Contract (Ninth Cause of Action)</u>

Plaintiff asserts Defendants "breached their agreement with Plaintiff by failing and refusing to perform in good faith their obligations under the Note and Mortgage by failing to notify Plaintiff of the change in ownership of the Note and Mortgage under ¶ 20 of the Mortgage." (Compl. ¶ 257.)

As previously discussed, the specific allegation of failure to notify of a change in ownership is unfounded because paragraph 20 of the Mortgage states the mortgage loan "can be sold one or more times without prior notice" to Plaintiff. (Defs.' Mem., Ex. 1 ¶ 20.) To the extent Plaintiff makes any further general allegations of breach of contract, they fail for the same reasons that he has failed to state a claim for wrongful foreclosure. This cause of action is therefore dismissed.

### C. Motion to Dismiss for Failure to Join a Required Party

Rule 12(b)(7) provides for dismissal of a case for failure to join a required party under Rule 19. Defendants argue the language and policy of Rule 19(a)(1)(B) require joinder of Plaintiff's ex-wife, who also signed the Mortgage and Note. Plaintiff has offered to join his ex-wife as a party. While the court appreciates Plaintiff's willingness to address this issue, joinder would not rescue his complaint because it would still be dismissed for failure to state a claim under Rule 12(b)(6).

### IV. CONCLUSION

Defendants' motion to dismiss (Dkt. No. 34) is ALLOWED in its entirety.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

14